IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**SUSAN C. DEAN**,

        Plaintiff,

    v.

**MICHAEL J. ASTRUE**, **Commissioner,
Social Security Administration,**

        Defendant.

No. 3:11-cv-00738-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Plaintiff, Susan Dean, seeks judicial review of the Social Security Administration ("SSA") Commissioner's decision finding her not disabled and denying her application for Supplemental Security Income ("SSI") disability benefits. I have jurisdiction under 42 U.S.C. § 405(g) and affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

    Ms. Dean filed an application for SSI alleging that she had been disabled since October 17, 2007. (Admin. R.[1] [9] 19). Her application was denied initially and on reconsideration. (*Id.*). Ms. Dean requested a hearing before an Administrative Law Judge ("ALJ"), and on March, 9,

---

[1] I hereafter cite to the Administrative Record [9], which was filed by the Commissioner on December 12, 2011, as "AR" followed by the corresponding page number.

1 – OPINION AND ORDER

2010, the ALJ found that she was not disabled. (*Id*.). Ms. Dean filed a petition for review, which the SSA Appeals Council denied On April 28, 2011, making the ALJ's order the final agency order. (*Id*. at 1). Ms. Dean timely filed this action on June 17, 2011.

## THE ALJ'S FINDINGS

The ALJ applied the five-step sequential review process in determining whether Ms. Dean qualifies as disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920. At step one, the ALJ found that Ms. Dean has not engaged in substantial gainful activity since October 17, 2007. (AR 21). At steps two and three, the ALJ found that Ms. Dean's bipolar disorder, generalized anxiety disorder, and personality disorder were severe impairments, but that the impairments, considered singly and in combination, did not meet or equal the listed impairments in the Commissioner's regulations. (*Id*.). Between steps three and four, in assessing plaintiff's residual functional capacity ("RFC"), the ALJ distinguished between exertional and nonexertional limitations, as follows: (1) plaintiff has the RFC to perform a full range of work at all exertional levels; and (2) plaintiff is limited to simple routine tasks. (*Id.* at 22). At step four, the ALJ found that Ms. Dean was unable to perform her past relevant work as a teacher. (*Id*. at 24). Lastly, at step five, the ALJ determined that plaintiff is capable of performing "a full range of unskilled work," and that occupations encompassed within this description exist in significant numbers in the national economy. (*Id*. at 25). Accordingly, the ALJ found that Ms. Dean is not disabled. (*Id*.).

## STANDARD OF REVIEW

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that the ALJ's findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

" 'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882.

## DISCUSSION

Ms. Dean argues that this case should be remanded because the ALJ improperly rejected Anne Prettyman's lay witness evidence, improperly considered her credibility, and failed to include all impairments in the RFC assessment.

### I.     Anne Prettyman's Third Party Function Report

Plaintiff argues that the ALJ improperly rejected the lay witness testimony included in her sister, Anne Prettyman's, Third Party Function Report. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006)). An ALJ that disregards the testimony of a lay witness must provide specific reasons germane to the witness. *Id*. An ALJ's failure to either consider lay witness testimony or to provide specific reasons for disregarding lay witness testimony is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (explaining that the reviewing court should look at the record as a whole in determining "whether the error alters the outcome of the case.").

3 – OPINION AND ORDER

The ALJ stated with regard to Ms. Prettyman: "The claimant's sister reported that the claimant's condition affects her ability to lift, squat, walk, talk, stair climb, use her hands, and get along with others []. I give this opinion little weight because it is not consistent with the record as a whole." (AR 23) (citation omitted). Plaintiff argues that the ALJ failed to provide specific reasons for disregarding the cited testimony and failed to consider all of Ms. Prettyman's observations.[2] If she had, plaintiff asserts the ALJ would have found Ms. Dean disabled. The ALJ's statement concerning Ms. Prettyman establishes that the ALJ reviewed Ms. Prettyman's Third Party Function Report, but it does not state with sufficient clarity the ALJ's reasoning for attaching little weight to her opinion. For the following reasons, however, I find that any error is inconsequential to the ultimate nondisability determination.

First, "[a]n ALJ need only give germane reasons for discrediting the testimony of lay witnesses." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). The ALJ properly accounted for several of Ms. Prettyman's opinions in finding that while plaintiff had the physical RFC for a full range of work at all exertional levels, she was limited mentally to unskilled work involving only simple routine tasks.

Second, the ALJ's failure to provide specific reasons germane to Ms. Prettyman for disregarding her testimony that the ALJ discredited is harmless, because I agree with the ALJ's conclusion that Ms. Prettyman's opinions as to the relevant issues are inconsistent with the record as a whole. For example, Ms. Dean contradicts her sister in her own Function Report in stating that her condition does not affect her ability to lift, squat, stair climb, use her hands, or get along with others. (AR 198). Ms. Dean also contradicts Ms. Prettyman's opinion concerning the

---

[2] In addition to the opinions specifically referenced by the ALJ, Ms. Prettyman further opined that plaintiff is aimless; retreats to her room when guests visit; has stress-triggered stomach problems; fails to plan for the future; has bouts of insomnia; fails to bathe daily; neglects her hair care; can no longer help with caterers; shows bad judgment with finances; and has low self-esteem. (AR 201–208).

degree that plaintiff's depression has on her ability to walk. (*Id*.). Moreover, an ALJ may reject lay witness testimony if it is inconsistent with medical evidence. *Bayliss*, 427 F.3d at 1218. Ms. Prettyman's report is inconsistent with plaintiff's doctors' observations that Ms. Dean's speech was clear, her thinking was reality oriented, her thought processes were linear and logical, and she was appropriately groomed and dressed. (AR 308–30; 409–25).

Accordingly, in reviewing the record as a whole, I conclude that the ALJ's failure to provide specific reasons for disregarding Ms. Prettyman's testimony is harmless, because the error does not alter the outcome of this case.

## II.     Credibility Determination

Plaintiff argues that the ALJ's adverse credibility finding is not supported by clear and convincing reasons. The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 23).[3] The parties agree that there was no malingering in this case, and thus, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ must specifically identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). This court

---

[3] Plaintiff argues the ALJ constructed the RFC first and then, without more, rejected as not credible any of Ms. Dean's allegations that did not fit the RFC. However, "[t]here is nothing wrong with an ALJ stating a conclusion and then explaining it, as opposed to providing explanation and then reaching a conclusion." *Black v. Astrue*, 10–cv–06409–MO, 2011 WL 6130534, at *6 (D. Or. Dec. 7, 2011). Accordingly, I reject this argument. The issue is whether the reasons the ALJ gave in support are sufficient.

does not engage in second-guessing if the ALJ's credibility finding is supported by substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

First, the ALJ discounted plaintiff's credibility based on Dr. Izzi's observations concerning the limiting effects of plaintiff's symptoms. (AR 23). The ALJ may rely on "testimony from physicians…concerning the nature, severity, and effect of the symptoms of which claimant complains." *Thomas*, 278 F.3d at 959 (alteration omitted). The ALJ specifically highlighted Dr. Izzi's conclusion that Ms. Dean "was capable of performing simple and repetitive type tasks on a consistent basis over an 8-hour period, would not likely have any problems getting along with peers or being supervised in a work-like setting, and would be able to respond to usual work session situations regarding attendance and safety issues and deal with changed in a routine work setting." (AR 23). The ALJ subsequently outlined Dr. Izzi's subjective and objective findings and noted that his opinion was consistent with the record overall. Therefore, the ALJ proffered clear and convincing reasons for attaching significant weight to Dr. Izzi's opinion and partially discrediting plaintiff's testimony.

Second, the ALJ rejected Ms. Dean's assertion that her depression has resulted in decreased energy, motivation, and the ability to concentrate, finding it inconsistent with her reported daily activities. An ALJ may weigh inconsistencies between the claimant's testimony and her daily activities in reaching a credibility determination. *Bray*, 554 F.3d at 1227. However, "[o]nly if the level of activity [is] inconsistent with Claimant's claimed limitation would these activities have any bearing on Claimant's credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ noted that while plaintiff reported decreased energy, motivation, and the ability to concentrate, she also reported that she completes household chores, cooks, shops, goes to church, reads, walks her dog, and gardens. The ALJ further noted that Ms. Dean was able to

adequately manage her financial affairs, socialize with friends and family, and assist in the care of an elderly friend. The ALJ's finding is supported by the record and undermines plaintiff's claim of disabling depression.

The ALJ's third reason in support of the adverse credibility finding relates to plaintiff's statements implying that she was not completely candid in reporting that she is unable to work because of her depression. The ALJ may rely on "ordinary techniques of credibility evaluation." *Smolen*, 80 F.3d at 1284. For example, the ALJ noted that plaintiff routinely stated to her therapist that she wanted to get a job and that the therapist recommend that she apply. However, at the SSA hearing, plaintiff stated that she was waiting until after the SSA hearing before applying for jobs. (AR 42). Plaintiff also stated that she did not want to apply for a job because she did not think that she would do well in an interview. When considering these facts, which are supported by the record, it is reasonable to infer, as the ALJ did, that Ms. Dean believes she can work despite her depression.

Lastly, the ALJ emphasized the medical evidence establishing that plaintiff had done well with her prescribed medications. The ALJ did not explain how this evidence undermines Ms. Dean's complaints. Defendant cites *Tommasetti* for the proposition that a claimant's positive response to conservative treatment undermines the claimant's reports of disabling symptoms. This case is inapposite in this context as plaintiff's combination of prescription anti-depressants and sleeping pills cannot be considered "conservative treatment." *See, e.g.*, *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (claimant's sole use of Ibuprofen to treat his pain considered conservative treatment). Without more, I am unable to determine how this evidence undermines Ms. Dean's allegation of disabling depression, and thus, this basis for the ALJ's credibility finding is not supported by substantial evidence in this record.

7 – OPINION AND ORDER

Despite this error, the ALJ has properly rejected Ms. Dean's testimony concerning the severity of her symptoms through specific, clear and convincing reasons. Plaintiff's statements regarding her daily activities and ability to work undermine her allegation of disabling depression. Dr. Izzi's opinion appropriately reflects the record as a whole and affirms that Ms. Dean is able to perform simple and repetitive type tasks on a consistent basis over an 8-hour period. Therefore, I reject Ms. Dean's contention that the ALJ's adverse credibility finding is not based on substantial evidence in the record.

### III.    RFC

As stated, the ALJ established the following RFC in this case: "the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple routine tasks." (AR 22). The ALJ also found that plaintiff has "a moderate limitation in concentration, persistence, and pace." (*Id*. at 21). The ALJ's latter finding was not explicitly encompassed in the following hypothetical that the ALJ posed to the vocational expert: "[L]et's assume a hypothetical person of the same age, education and work background as the claimant. If this person has no exertional limitations, was restricted to simple routine tasks, past work?" (*Id*. at 48). Plaintiff argues that the ALJ's RFC fails to account for her moderate limitation in concentration, persistence, and pace, and thus, the ALJ's hypothetical to the vocational expert describing Ms. Dean's ability to do "simple routine tasks" failed to capture these deficiencies.

The ALJ's questions to the vocational expert must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). This court has remanded cases where an ALJ fails to include, in either an RFC or hypothetical, a claimant's moderate difficulties maintaining concentration, persistence, or pace in the RFC. *See Berjettej v. Astrue*,

8 – OPINION AND ORDER

09–CV–892–BR, 2010 WL 3056799, at *7 (D. Or. July 30, 2010). In *Berjettej*, the ALJ's RFC merely restricted the claimant to "simple routine work tasks," despite the reviewing psychologist's opinion that the claimant had moderate difficulties maintaining concentration, persistence, and pace. The court remanded the case, noting that the ALJ erred when he failed to address the reviewing psychologist's opinion as to the claimant's moderate difficulties in maintaining concentration, persistence, or pace and failed to include such limitations in the RFC or hypothetical to the vocational expert.

The analysis, however, is not as simple as merely finding that "simple" work does not include as a matter of law limitations in concentration, persistence, and pace. When faced with a similar factual situation as in *Berjettej* and this case, the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs–Danielson v. Astrue,* 539 F.3d 1169, 1173 (9th Cir. 2008). In *Stubbs–Danielson*, a state agency reviewing psychologist provided the only concrete limitations concerning the claimant's ability to work. In his report, he indicated that the claimant had " 'a slow pace, both in thinking & actions' and several moderate limitations in other mental areas," but ultimately concluded the claimant " retained the ability to 'carry out simple tasks as evidenced by her ability to do housework, shopping, work on hobbies, cooking and reading.' " *Id*. The ALJ "translated" the claimant's condition "into the only concrete restrictions available to him-[the psychologist's] recommended restriction to 'simple tasks.' " *Id*. Therefore, the Court held that "the ALJ's RFC finding properly incorporated the limitations identified by [the psychologist], including those related to pace and the other mental limitations regarding attention, concentration, and adaption." *Id*. at 1174 (highlighting that the only concrete limitations were provided by the psychologist,

9 – OPINION AND ORDER

who found the claimant able to perform simple tasks despite her deficiencies in pace and other areas).

The *Stubbs–Danielson* Court cited with approval *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001), in which the Eighth Circuit similarly rejected a claim that an ALJ's hypothetical describing an ability to do "simple, routine, repetitive work" failed to capture deficiencies in concentration, persistence, or pace, because the state psychologist's findings concluded that the claimant, despite certain pace deficiencies, retained the ability to do simple, repetitive, routine tasks. The *Howard* Court indicated that the psychological consultant described the claimant as often having deficiencies of concentration, persistence, or pace, but stated that she was nonetheless " 'able to sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function.' " *Id*. at 582. On the other hand, the Court distinguished *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003), observing that the Seventh Circuit's primary concern—"the ALJ's failure to provide an explanation for the omission from the hypothetical question of the ALJ's earlier observation that the claimant suffered from 'frequent deficiencies of concentration, persistence, or pace' "— was not present in *Stubbs–Danielson*, because the "ALJ's opinion explains the omission of Stubbs-Danielson's moderate pace deficiencies from the RFC finding by reference to [the psychologist's] assessment." *Stubbs–Danielson,* 539 F.3d at 1175.

In *Kasarsky*, the ALJ appended a Psychiatric Review Technique Form ("PRTF") to his decision which stated that the claimant had frequent deficiencies in concentration, persistence or pace. 335 F.3d at 543. The record indicated that the claimant's rehabilitation psychologist opined that the claimant was a "slow learner" and recommended that his "mental tasks be limited to a single repetitive action that would not require much instruction." *Id*. at 542. The Court observed,

however, that the ALJ's hypothetical to the vocational expert reflected only the ALJ's finding about the claimant's RFC, which stated that the claimant was "seriously limited, but not precluded from understanding, remembering, and carrying out detailed instructions" because of borderline intelligence. *Id*. at 544. The Court found that the RFC did not take into account the ALJ's own observation, both in his opinion and in the PRTF, that the claimant suffered from frequent deficiencies of concentration, persistence, or pace, because "the length of time it takes someone with borderline intelligence to learn a job is not the same as the ability of that person to perform consistently once trained." *Id*. The Seventh Circuit remanded the case, noting that the deficiencies of concentration, persistence, or pace were fully supported by the record but omitted from the ALJ's hypothetical. *Id*. (explaining that while there was a possible explanation for the ALJ's omission—even with frequent deficiencies of concentration, persistence, or pace, the claimant could still carry out detailed instructions in a way that would satisfy a potential employer—the Court had no way of knowing it).

In this case, Dr. Izzi examined Ms. Dean and indicated that her "problem areas include attention and recall," and that she had "difficulty performing serial 7's," which is included in the "Attention/Concentration" section. Nonetheless, he concluded that Ms. Dean is capable of performing a simple and repetitive task on a consistent basis over an eight-hour day. (AR 262). The ALJ's assessment of Ms. Dean—that she is limited to simple routine tasks—is consistent with the restrictions identified by Mr. Izzi, and thus, the RFC adequately captures restrictions related to concentration, persistence, and pace. Moreover, like in *Stubbs-Danielson*, the ALJ's opinion explains the omission of Ms. Dean's moderate pace deficiencies from the RFC finding by reference to Dr. Izzi's assessment. Therefore, I find the ALJ's RFC finding properly

11 – OPINION AND ORDER

incorporated the limitations identified by Dr. Izzi concerning plaintiff's moderate deficiencies with concentration, persistence, and pace.

## CONCLUSION

For the foregoing reasons, I AFFIRM the Commissioner's decision.

IT IS SO ORDERED.

DATED this   13th   day of July, 2012.

                                               /s/ Michael W. Mosman
                                             MICHAEL W. MOSMAN
                                             United States District Court